PRESENT: Hassell, C.J., Lacy, Keenan, Koontz, Lemons, and Agee, JJ., and Stephenson, S.J.

BBF, INC., F/K/A BALCKE-DÜRR, INC.

OPINION BY
v.  Record No. 061317   SENIOR JUSTICE ROSCOE B. STEPHENSON, JR.
June 8, 2007
ALSTOM POWER, INC.

FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Melvin R. Hughes, Jr., Judge

In this appeal, we decide whether the trial court erred in refusing to vacate an arbitration award.

I

Alstom Power, Inc. (Alstom U.S.), filed in the Circuit Court of the City of Richmond a motion seeking confirmation of an arbitration award.  BBF, Inc., F/K/A Balcke-Dürr, Inc. (BBF), filed a response in opposition to Alstom U.S.'s motion and moved for vacation of the award.  Following a hearing, the trial court denied BBF's motion, confirmed the arbitration award, and entered judgment for Alstom U.S. against BBF in the amount of $2,738,178, plus interest.

We awarded BBF this appeal.

II

Alstom U.S., a Delaware corporation with its principal place of business in Midlothian, Virginia, is engaged in the design, engineering, and commissioning of combined-cycle, gas-fired, power-generating plants.  Alstom U.S. contracted with

American National Power (ANP), an electric utility, to design and build two power plants located outside the Commonwealth.

Alstom U.S. contracted with BBF to provide both plants with air-cooled condensers. An air-cooled condenser is a piece of equipment used to condense steam from steam turbine exhaust by cooling it with air. Alstom U.S. designed and built the plants, and BBF supplied and installed the condensers. The purchase orders for the condensers contained a liquidated damages formula, subject to a cap of 20% of the purchase amount, if the condensers failed to achieve guaranteed performance. The parties agreed that all disputes related to the two projects would be determined by arbitration and that the arbitration would be governed by the laws of Virginia.

At the time Alstom U.S. contracted with BBF and unbeknownst to BBF, Alstom U.S. also had contracted with its subsidiary, Alstom Power (Switzerland) Ltd. (Alstom Switzerland). Under the terms of that contract, Alstom Switzerland agreed to reimburse Alstom U.S. for losses it might sustain arising out of the performance of the condensers. When the two power plants were completed, ANP assessed liquidated damages against Alstom U.S. for deficiencies in plant performance relating to the condensers.

Other disputes also arose between Alstom U.S. and BBF, and, in accordance with their agreement, all the disputes were

arbitrated.  Following a hearing, the arbitrators determined that BBF owed Alstom U.S. liquidated damages in the amount of $2,244,900 for performance deficiencies at one plant and $2,312,000 for performance deficiencies at the other plant, for a total of $4,556,900.  After adjusting for other claims made by the parties, the net award to Alstom U.S. was $2,738,178.

### III

BBF contends that the arbitrators exceeded their powers by awarding liquidated damages to Alstom U.S.  BBF asserts that Alstom U.S. suffered no damages because Alstom Switzerland had assumed the risk and responsibility for all condenser failures and that Virginia law prohibits an award of liquidated damages to a party who has suffered no actual damages.  BBF claims that the arbitrators' award was not a mere application of law, but was a violation of "clear public policy."

Alstom U.S. counters with the assertion that, "[a]s a matter of Virginia law, an alleged violation of public policy cannot be a basis for vacating an arbitration award where, as here, the arbitrator has acted within the scope of the authority granted by the arbitration agreement."

### IV

The trial court, in denying BBF's motion to vacate and in confirming the arbitration award, concluded that the arbitrators

3

did not act outside the scope of their authority, even though they may have misapplied Virginia law regarding damages.

A circuit court's review of an arbitration award is "limited to the specific statutory criteria contained in Virginia's Uniform Arbitration Act [(the Act)]." SIGNAL Corp. v. Keane Federal Systems, Inc., 265 Va. 38, 45, 574 S.E.2d 253, 256 (2003). Code § 8.01-581.010 of the Act provides the exclusive grounds to set aside an arbitration award, Lackman v. Long & Foster Real Estate, 266 Va. 20, 26, 580 S.E.2d 818, 822 (2003), and it reads, in pertinent part, as follows:

> Upon application of a party, the court shall vacate an award where:
>
> 1. The award was procured by corruption, fraud or other undue means;
>
> 2. There was evident partiality by an arbitrator appointed as a neutral, corruption in any of the arbitrators, or misconduct prejudicing the rights of any party;
>
> 3. The arbitrators exceeded their powers;
>
> 4. The arbitrators refused to postpone the hearing upon sufficient cause being shown therefor or refused to hear evidence material to the controversy or otherwise so conducted the hearing . . . in such a way as to substantially prejudice the rights of a party; or
>
> 5. There was no arbitration agreement . . . .
>
> The fact that the relief was such that it could not or would not be granted by a court of law or equity is not grounds for vacating or refusing to confirm the award.

In determining whether the arbitrators exceeded their authority pursuant to Code § 8.01-581.010(3), the issue we decide is not whether the award is legally correct. We decide only whether the arbitrators had the power to decide the parties' contract claims. SIGNAL Corp., 265 Va. at 45, 574 S.E.2d at 257. Indeed, we have made clear that arbitrators "derive their authority solely from the parties' contractual agreement to arbitrate disputes arising under the contract." Trustees v. Taylor & Parrish, Inc., 249 Va. 144, 153, 452 S.E.2d 847, 852 (1995).

We have consistently rejected efforts to vacate an arbitration award on grounds not specified in Code § 8.01-581.010. For example, in SIGNAL Corp., we refused to adopt a "manifest disregard of the law" standard "because to do so would require that this Court add words to Code § 8.01-581.010, which enumerates the bases on which a court shall vacate an arbitration award." Id. at 46, 574 S.E.2d at 257. In construing a statute, we must apply its plain meaning, and "we are not free to add [to] language, nor to ignore language, contained in statutes." Id.

In Lackman, we stated that the only relevant inquiry under Code § 8.01-581.010(3) is "whether the issues resolved were within the scope of authority granted the arbitrators in the agreement to arbitrate." 266 Va. at 25, 580 S.E.2d at 821-22.

5

We also rejected an attempt to invoke the trial court's equity powers to enjoin enforcement of an arbitration award based upon equitable defenses of fraud, estoppel, and unclean hands. In doing so, we explained that the predecessor statute, former Code § 8.01-580, "specifically stated that the section 'shall not be construed to take away the power of courts of equity over awards.' " Id. at 26, 580 S.E.2d at 822. Continuing, we said that "[t]he General Assembly eliminated this provision when it enacted Code § 8.01-581.010 in 1986. Elimination of the provision terminated the ability of a court to invoke its equity powers when reviewing an arbitration award." Id.

V

In the present case, the parties, by their contract, empowered the arbitrators to award liquidated damages and to resolve all disputes. Clearly, therefore, the arbitrators did not exceed their powers in awarding liquidated damages. Additionally, as the General Assembly clearly stated in Code § 8.01-581.010: "The fact that the relief was such that it could not or would not be granted by a court of law or equity is not grounds for vacating or refusing to confirm the award."

For the reasons stated, we hold that BBF's claim that the award of liquidated damages violated public policy does not state a ground for vacating an arbitration award contained in Code § 8.01-581.010. Therefore, the trial court did not err in

6

refusing to vacate the arbitration award.  Accordingly, we will affirm the trial court's judgment.

<u>Affirmed</u>.