PRESENT:  All the Justices

SUNDAY LUCAS

                                        OPINION BY
v.    Record No. 131064          JUSTICE S. BERNARD GOODWYN
                                       April 17, 2014
C. T. WOODY, JR., ET AL.


          FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                Michael C. Allen, Judge Designate

     In this appeal, we consider whether a plaintiff who brings

a personal injury action relating to the conditions of her

confinement in a state or local correctional facility must be

incarcerated at the time her cause of action is filed in order

for the statute of limitations in Code § 8.01-243.2 to be

applicable to that action.

                           Background

     Sunday Lucas (Lucas) filed suits against C.T. Woody, Jr.,

Stanley Furman, Menyon Graham, Laura Terry, Robert Ford,

Anneika Brown, Carolyn Quigley, Robert Cushionberry, Yuvonka

Lewis and Darryl Hack (the Defendants).  She alleged that she

was injured by the Defendants' course of conduct that began on

January 16, 2008, while she was incarcerated in the Richmond

City Jail, and concluded on March 11, 2008, when she was

released from the jail.

     Lucas filed her initial complaint against defendants

Woody, Graham, Terry, Ford, Brown, Quigley, Cushionberry and

Lewis on August 13, 2009, in the Circuit Court of the City of

Richmond (Circuit Court). Another lawsuit concerning the same events was filed against defendants Furman and Hack in the same court on January 13, 2010. The two suits were consolidated on March 18, 2011. The actions against all of the Defendants were nonsuited by order dated October 5, 2011.

On February 1, 2012, Lucas refiled her causes of action against the Defendants in the Circuit Court. In that complaint, as in the previous complaints, Lucas asserted only state law causes of action. Lucas was not incarcerated when she filed any of her lawsuits.

In response to the complaint filed on February 1, 2012, the Defendants filed a plea of the statute of limitations and asserted the running of the statute of limitations in Code § 8.01-243.2 as an affirmative defense. At a hearing on September 20, 2012, the Circuit Court sustained the plea in bar regarding the statute of limitations in Code § 8.01-243.2 as to all of Lucas's state claims, but granted Lucas leave to file an amended complaint asserting federal claims under 42 U.S.C. § 1983.

On October 11, 2012, Lucas filed an amended complaint against the Defendants asserting claims pursuant to § 1983 only (amended complaint). Shortly thereafter, Lucas filed a motion for leave to file a second amended complaint. The proposed second amended complaint contained the state law claims

2

previously dismissed as barred by the statute of limitations, as well as the § 1983 claims.  A motion to reconsider the statute of limitations ruling regarding the state law claims was filed with the motion for leave to amend and the proposed second amended complaint.

In response to the amended complaint, the Defendants each filed a special plea of the statute of limitations alleging that the § 1983 claims were barred by the applicable statute of limitations or asserted the statute of limitations as a defense.  At a hearing on March 1, 2013, the Circuit Court considered and denied Lucas's motion to reconsider its statute of limitations ruling on the state law claims.  It also denied her motion to file a second amended complaint.

The Circuit Court thereafter considered the Defendants' special pleas and affirmative defense of the statute of limitations to the amended complaint.  The Defendants conceded that a two-year statute of limitations applied to Lucas's § 1983 claims.  The Defendants also conceded that the conduct or injury claimed in support of the § 1983 action was the same as the conduct or injury alleged in the state law claims.  The primary issue considered by the Circuit Court in determining whether such claims were barred by the statute of limitations related to whether the claims alleged in the amended complaint

were allowed, by Code § 8.01-6.1, to relate back to the filing of the initial complaints.

The Circuit Court ruled that the due diligence and absence of prejudice requirements of Code § 8.01-6.1 had not been satisfied and that the § 1983 claims filed in 2012 did not relate back to the original filings of the state law claims. It sustained the special plea and affirmative defense of the statute of limitations on the § 1983 claims.

Lucas appeals. This Court has granted the following assignments of error:

> 1. The trial court erred in sustaining the defendants' pleas in bar to Lucas' state law causes of action based on the statute of limitations.
>
> 2. The trial court erred in refusing to grant Lucas leave to file a second amended complaint which would have allowed her to pursue the state law causes of action and a § 1983 cause of action.

### Analysis

Code § 8.01-243.2 states:

> No person confined in a state or local correctional facility shall bring or have brought on his behalf any personal action relating to the conditions of his confinement until all available administrative remedies are exhausted. Such action shall be brought by or on behalf of such person within one year after cause of action accrues or within six months after all administrative remedies are exhausted, whichever occurs later.

4

The facts surrounding the dates the causes of action accrued and the filing dates of the complaints are not in dispute. Lucas's complaints alleged that she was injured between January 16, 2008, and March 11, 2008, while incarcerated in the Richmond City Jail. She was released from incarceration on March 11, 2008.

Lucas filed her initial complaints against the Defendants on August 13, 2009, and January 13, 2010, and the actions were refiled within six months of being nonsuited. The issue of whether the actions filed by Lucas related to the conditions of her confinement is settled for purposes of this appeal in that no party disputes the Circuit Court's ruling in that regard. Thus, the only issue is whether the statute of limitations contained in Code § 8.01-243.2 is applicable in this instance.

Where the facts are undisputed, as in the present case, "the applicability of the statute of limitations is a purely legal question of statutory construction which we review de novo." Conger v. Barrett, 280 Va. 627, 630, 702 S.E.2d 117, 118 (2010). In Conyers v. Martial Arts World of Richmond, Inc., 273 Va. 96, 104, 639 S.E.2d 174, 178 (2007), our Court stated:

> When the language of a statute is unambiguous, we are bound by the plain meaning of that language. Furthermore, we must give effect to the legislature's intention as expressed by the language used unless a literal interpretation of the language would result

in a manifest absurdity. If a statute is subject to more than one interpretation, we must apply the interpretation that will carry out the legislative intent behind the statute.

(Citations omitted.)

Lucas asserts that the Circuit Court erred in sustaining the Defendants' pleas in bar to her state law claims because Code § 8.01-243.2 is not applicable to her claims. In support of this position, Lucas argues that the statute of limitations provision in Code § 8.01-243.2 does not apply because she was no longer "confined" at the time she filed her actions. Because she was not incarcerated when she filed her actions, Lucas asserts that she had two years from the time her causes of action arose within which to file suit as provided in Code § 8.01-243(A).

The Defendants claim that the statute of limitations, stated in the second sentence of Code § 8.01-243.2, applies to all personal actions related to conditions of confinement in a state or local correctional facility. They claim the statute of limitations is applicable whether or not a plaintiff is still confined at the time he or she files an action.

In Bing v. Haywood, 283 Va. 381, 385, 722 S.E.2d 244, 246 (2012), this Court stated, "For the one-year provision

6

in Code § 8.01-243.2 to apply, the plaintiff must have been confined at the time the cause of action accrued, and the cause of action must relate to plaintiff's conditions of confinement." (Internal quotation marks omitted.) It is undisputed that Lucas was confined at the time the cause of action accrued and that her causes of action related to her conditions of confinement.

As the Court's holding in Bing reflects, the plain language of the first sentence of Code § 8.01-243.2 requires that a person confined in a state or local correctional facility exhaust all available administrative remedies before bringing a personal injury action relating to conditions of confinement. The second sentence of Code § 8.01-243.2 creates a statute of limitations period for the cause of action mentioned in the first sentence of the statute — a personal injury cause of action relating to the conditions of confinement in a state or local correctional facility. This case concerns the question, which was not directly addressed in Bing, of whether the statute of limitations in Code § 8.01-243.2 applies when the plaintiff is no longer incarcerated at the time she files her action relating to conditions of her confinement. It does.

The terms "[s]uch action" and "such person" used in the Code § 8.01-243.2 statute of limitations provision are not defined. As mentioned above, "[s]uch action" clearly refers to a personal action relating to the conditions of the plaintiff's confinement. The parties, however, disagree as to what the term "such person" refers. Lucas claims it refers to a person confined in a state or local correctional facility. The Defendants assert that it refers to a person who brings or has brought on his behalf a personal action relating to the conditions of his or her confinement. Both interpretations of "such person" can be supported by the language of the statute.

If the term "such person" is interpreted as urged by Lucas, the applicability of the statute of limitations is dependent upon whether a plaintiff is confined at the time he or she brings an action relating to conditions of confinement. If the term is interpreted as urged by the Defendants, the statute of limitations in Code § 8.01-243.2 applies to all personal actions relating to the conditions of confinement.

The first sentence of Code § 8.01-243.2 clearly requires a person who is confined to exhaust all administrative remedies before filing a personal action relating to conditions of confinement. This makes sense

8

in that an individual would necessarily need to be confined in order to take advantage of administrative remedies offered by a state or local correctional facility.  However, a person does not need to be confined to file a personal action relating to the conditions of his or her confinement.  Therefore, it does not follow that the legislature intended continued confinement to be a prerequisite for the applicability of the statute of limitations imposed upon a personal action relating to conditions of the plaintiff's confinement.

Having the applicability of a statute of limitations change based upon the confinement status of the plaintiff at the time a lawsuit is filed, rather than the particular cause of action asserted and the plaintiff's status at the time the action accrued would be anomalous.  It would result in two different and shifting statutes of limitations for the same cause of action relating to a plaintiff's conditions of confinement.  It would create uncertainty concerning when the statute of limitations for personal actions relating to confinement has run because a claim barred by the statute of limitations in Code § 8.01-243.2 could be revived by a change in a plaintiff's confinement status and a resulting change in the applicable statute of limitations.  Reading the statute as

9

Lucas suggests, such that the applicability of Code § 8.01-243.2 is dependent upon the plaintiff's confinement status at the time suit is filed, would produce bizarre results. For instance, it would allow a cause of action otherwise barred by the statute of limitations to be revived upon the individual's release from incarceration, and then, perhaps, to be extinguished once again if the individual is reincarcerated before filing suit. The purpose of a statute of limitations is to provide parties and potential parties certainty with regard to when a cause of action is extinguished; the interpretation of Code § 8.01-243.2 urged by Lucas would do the opposite.

Additionally, Code § 8.01-230 provides that "the right of action shall be deemed to accrue and the prescribed limitation period shall begin to run from the date the injury is sustained." When Code § 8.01-230 is read in conjunction with Code § 8.01-243.2, the statutes mandate the conclusion that a cause of action for personal injury related to conditions of confinement in a state or local correctional facility accrues on, and the statute of limitations period begins to run from, the date the injury is sustained. If a person's confinement status is relevant, it is the confinement status of the plaintiff at the time that the cause of action accrues that determines

the proper statute of limitations.  Inherently, a personal action relating to conditions of confinement accrues while the plaintiff is confined.  So, even if the language in the Code § 8.01-243.2 statute of limitations is interpreted as Lucas argues, that statute of limitations would still apply to any claim relating to the conditions of a plaintiff's confinement.

The statute of limitations in Code § 8.01-243.2 applies to personal actions relating to conditions of confinement in a state or local correctional facility. The General Assembly clearly intended to impose a defined end-point for commencement of such claims.  There is no obvious rationale which explains how exempting individuals from that statute of limitations upon their release from incarceration would further that intent.  We rule that the statute of limitations provision in Code § 8.01-243.2 applies to all personal actions relating to the conditions of an individual's confinement regardless of whether the plaintiff is still incarcerated when such action is filed. Thus, the Circuit Court did not err in finding that Lucas's state law claims were barred by the statute of limitations contained in Code § 8.01-243.2.

Lucas also alleges that the Circuit Court erred in not granting leave for her to file a second amended

11

complaint.  The applicable standard of review for this assignment of error is an abuse of discretion standard. "On appeal, review of the trial court's decision to grant or deny a motion to amend is limited to the question whether the trial judge abused his discretion."  Hetland v. Worcester Mutual Ins. Co., 231 Va. 44, 46, 340 S.E.2d 574, 575 (1986).  We hold that the Circuit Court did not abuse its discretion in refusing to grant Lucas leave to file her second amended complaint, which sought to reassert state law claims that the court had properly dismissed pursuant to pleas in bar.

Conclusion

Accordingly, for the reasons stated above, we will affirm the judgment of the Circuit Court.

Affirmed.

JUSTICE MILLETTE, with whom JUSTICE MIMS and JUSTICE POWELL join, dissenting.

I believe the majority fails to apply the plain language of Code § 8.01-243.2, and instead improperly invokes the doctrines of ambiguity and absurdity to apply the statutory language it might have preferred.  I therefore respectfully dissent.

I.   The Applicable Statute of Limitations

A.   Code § 8.01-230

Code § 8.01-230 reads in relevant part:

> In every action for which a limitation period is prescribed, the right of action shall be deemed to accrue and the prescribed limitation period shall begin to run from the date the injury is sustained in the case of injury to the person or damage to property.

Code § 8.01-230 establishes when a plaintiff's cause of action accrues and when the applicable statute of limitations begins to run. Notably, Code § 8.01-230 does not identify what statute of limitations applies to any particular cause of action. That is, although Code § 8.01-230 certainly provides a starting point for a court to determine when a statute of limitations clock begins, it provides no guidance to determine just how long that clock will run before time has run out.

This appeal requires us to resolve whether Lucas's conditions of confinement action is governed by the two year limitations period in Code § 8.01-243, or by the variable limitations period in Code § 8.01-243.2. Because the plain language of Code § 8.01-243.2 does not apply to Lucas's action, I would hold that the two year limitations period prescribed by Code § 8.01-243 governs.

B.    Code § 8.01-243.2

Code § 8.01-243.2 consists of only two sentences and reads in its entirety:

13

[1] No person confined in a state or local
correctional facility shall bring or have brought on
his behalf any personal action relating to the
conditions of his confinement until all available
administrative remedies are exhausted.  [2] Such
action shall be brought by or on behalf of such
person within one year after [the] cause of action
accrues or within six months after all administrative
remedies are exhausted, whichever occurs later.

(Bracketed numbers added.)

Sentence [1] is not a statute of limitations provision.
Instead, it creates a prerequisite for a person currently
"confined in a state or local correctional facility" who wants
to "bring" an action "relating to the conditions of his
confinement."  Code § 8.01-243.2.  Before bringing such an
action, such person must first "exhaust[]" "all available
administrative remedies."  Id.  Sentence [1] does not apply to
Lucas because she was not "confined in a state or local
correctional facility" when she "brought" her February 2012
complaint.

Sentence [2] of Code § 8.01-243.2 is a statute of
limitations provision.  Two key terms are used in this
sentence: "[s]uch action" and "such person."  These terms are
not defined within Sentence [2].  However, this Court
"examine[s] a statute in its entirety, rather than by isolating
particular words or phrases."  Small v. Fannie Mae, 286 Va.
119, 127, 747 S.E.2d 817, 821 (2013).  Indeed, by using the
word "such" to modify both "action" and "person," Sentence [2]

14

directs this Court to look elsewhere in the same statute to understand those terms. See, e.g., Smith v. Commonwealth, 190 Va. 10, 18, 55 S.E.2d 427, 430 (1949) ("In our opinion, 'such person' in the second portion of [then existing Code § 4488] refers to 'any person' in the first portion thereof."); see also Black's Law Dictionary 1570 (9th ed. 2009) (defining the adjective "such" as referring to "[t]hat or those; having just been mentioned").

The only other provision within Code § 8.01-243.2 alluding to "person" and "action" is Sentence [1]. It is there that this Court can find what actions and persons are governed by Sentence [2]. Thus, "[s]uch action" and "such person" are not ambiguous terms by being "difficult to comprehend" or "lack[ing] clearness and definiteness." Brown v. Lukhard, 229 Va. 316, 321, 330 S.E.2d 84, 87 (1985).

In Sentence [1], "[s]uch action" is defined as "any personal action relating to the conditions of his [or her] confinement." Code § 8.01-243.2; see also Bing v. Haywood, 283 Va. 381, 385, 722 S.E.2d 244, 245-46 (2012). In Sentence [1], "such person" is defined as a "person confined in a state or local correctional facility." Code § 8.01-243.2. The terms "action" and "person," as used in Sentence [2], are matched with the phrases in Sentence [1] that define those very terms. Thus, this is the "plain, obvious, and rational meaning" of the

15

terms "[s]uch action" and "such person," and it is the construction that this Court must "prefer[] over any curious, narrow, or strained construction." Lawlor v. Commonwealth, 285 Va. 187, 237, 738 S.E.2d 847, 875 (2013). Indeed, this is the method this Court employed to previously define "[s]uch action" as a "personal action relating to the conditions of [the plaintiff's] confinement." See Bing, 283 Va. at 387, 722 S.E.2d at 247. It stands to reason that this Court should also employ this method to define "such person" in this case.

Substituting the applicable phrases from Sentence [1] for the terms "[s]uch action" and "such person," Sentence [2] reads:

> ["[A]ny personal action relating to the conditions of his confinement"] shall be brought by or on behalf of [a "person confined in a state or local correctional facility"] within one year after cause of action accrues or within six months after all administrative remedies are exhausted, whichever occurs later.

Code § 8.01-243.2.

With these statutory definitions plugged into Sentence [2], the plain language is clear. The statute of limitations provision in Code § 8.01-243.2 applies only if two requirements are met: if "[s]uch action" is a "personal action relating to the conditions of [the plaintiff's] confinement," and if that personal action is "brought by or on behalf of such person,"

16

who is a "person confined in a state or local correctional facility." See Bing, 283 Va. at 387, 722 S.E.2d at 247.

### 1. The "Such Action" Requirement

In this case, Lucas's state law claims related to the conditions of her confinement at the Richmond Jail. Indeed, Lucas was confined at a state or local correctional facility at the time her cause of action accrued because the injuries giving rise to Lucas's state law claims occurred while Lucas was an inmate at the Richmond Jail. See Code § 8.01-230; Laws v. McIlroy, 283 Va. 594, 599, 724 S.E.2d 699, 702 (2012); see also Bing, 283 Va. at 387, 722 S.E.2d at 247. Because Lucas's claims relate to the conditions of the confinement she endured when her cause of action accrued, the "[s]uch action" requirement was satisfied. Bing, 283 Va. at 385-87, 722 S.E.2d at 245-47.

### 2. The "Such Person" Requirement

The "[s]uch action" requirement looks to see if the plaintiff was confined at the time her cause of action accrued. In contrast, the "such person" requirement evaluates whether the plaintiff was a person "confined" when the action is "brought." When a plaintiff's cause of action accrues is not synonymous with when a plaintiff "brought" a personal action.

A personal action is brought when a complaint is filed. See Ahari v. Morrison, 275 Va. 92, 96, 654 S.E.2d 891, 894

17

(2008) ("Only at that time was the amended complaint deemed filed, thereby adding the new party defendants and commencing the action as to them."); Mendenhall v. Douglas L. Cooper, Inc., 239 Va. 71, 76, 387 S.E.2d 468, 471 (1990) ("[I]t is well-established that when a new party is brought into a suit by an amended pleading, the suit must be deemed to have been commenced as to him at the time that he was so brought in." (internal quotation marks omitted)); see also Bulala v. Boyd, 239 Va. 218, 224, 389 S.E.2d 670, 672 (1990) ("[Plaintiffs] brought this civil action against [defendant] by complaint filed in the United States District Court for the Eastern District of Virginia."). In contrast, a "cause of action accrues [at the time when] the injury is sustained in the case of injury to the person." McIlroy, 283 Va. at 599, 724 S.E.2d at 702 (internal quotation marks omitted); see also Code § 8.01-230.

Thus, the "such person" requirement is met when the plaintiff was "confined" at the time when that plaintiff "brought" her personal action. Code § 8.01-243.2 (emphasis added). In this case, Lucas was not "confined in a state or local correctional facility" when she "brought" her "conditions of . . . confinement" action by filing the February 2012 complaint. Thus, the "such person" requirement was not satisfied.

For these reasons, by its plain language, the statute of limitations provision in Code § 8.01-243.2 did not apply to Lucas's state law claims alleged in her February 2012 complaint.

C.    The Court Ignores the Plain Language of Code § 8.01-243.2

Today, the Court commits error by incorrectly invoking the doctrines of ambiguity and absurdity — while conspicuously refusing to identify those doctrines by their names — to avoid the plain language of Code § 8.01-243.2.

1.    The Court Finds Ambiguity Where None Exists

The Court summarily holds that two interpretations of the phrase "such person" appearing in Sentence [2] can be supported by the language of the statute.  It utilizes this ambiguity to justify its deviation from the plain language of the statute. However, this invocation of ambiguity is valid only if the Court ignores the plain language of Sentence [1], which it cannot do.  BBF, Inc. v. Alstom Power, Inc., 274 Va. 326, 331, 645 S.E.2d 467, 469 (2007) ("[W]e are not free . . . to ignore language[] contained in statutes.") (quoting SIGNAL Corp. v. Keane Federal Sys., Inc., 265 Va. 38, 46, 574 S.E.2d 253, 257 (2003)).

The first understanding of "such person," argued for by Lucas, is what Sentence [1] states plainly: "such person[s]" are those plaintiffs who, simply and unqualifiedly, are

19

"confined."  (Emphasis added.)  This is how Sentence [1]
clearly reads without judicial alteration.

The second understanding of "such person," argued for by
the Defendants, is that it refers to all persons who bring a
conditions of confinement claim regardless of their confinement
status when the action is brought.  But the Defendants' reading
of "such person" is supported by the statutory language only if
the Court ignores the statement in Sentence [1] that a "person"
is someone who is "confined in a state or local correctional
facility."  By embracing such a reading, however, the Court
abandons its obligation "to provide meaning to all the words of
a statute," and thereby impermissibly creates an ambiguity
where none otherwise exists.  Commonwealth v. Squire, 278 Va.
746, 752, 685 S.E.2d 631, 634 (2009); see LaCava v.
Commonwealth, 283 Va. 465, 471, 722 S.E.2d 838, 841 (2012).

2.    The Court Utilizes the Absurdity Doctrine to Impose Its
Policy Preferences

The Court does not invoke the absurdity doctrine by name,
but instead describes the application of the plain language of
Code § 8.01-243.2 as being "anomalous" and "bizarre."  Taking
this assessment of the plain language at face value reveals
error, because the Court "traverse[s] the separation of powers
and enter[s] the domain of . . . questions of legislative
policy."  Starrs v. Commonwealth, 287 Va. 1, 14, 752 S.E.2d

20

812, 820 (2014) (internal quotation marks omitted).  It is not the role of the judicial branch to question the soundness of the policies adopted by the political branches.  Elizabeth River Crossings OpCo, LLC v. Meeks, 286 Va. 286, 309, 749 S.E.2d 176, 187 (2013) ("[If the political branches have] acted within the constitutional boundaries that limit the exercise of their governmental power, . . . then their policy decisions are subject to, and properly evaluated by, the political will of the people, and [this Court has] no authority to override such political decisions.").

But a deeper problem exists with the Court's avoidance of the absurdity doctrine.  Both the circuit court and the Defendants characterized the application of the plain language of Code § 8.01-243.2 as being absurd.  The Court today adopts those arguments as its own, but simply reframes the argument as describing an "anomalous" and "bizarre" result, rather than an absurdity.  To the extent this is the Court's invocation of the absurdity doctrine in all but name, it is error.  No absurdity results from applying the plain language of Code § 8.01-243.2.

The absurdity doctrine is a tool of statutory construction employed in rare circumstances involving fundamentally flawed legislative drafting.  The doctrine is implicated only if adopting the plain language of a statute would result in absurdity.  See Cook v. Commonwealth, 268 Va. 111, 116, 597

21

S.E.2d 84, 87 (2004). If an absurd result would occur, this Court replaces the literal meaning of the statute's plain language with a construction avoiding such absurdity. See, e.g., Baker v. Wise, 57 Va. (16 Gratt.) 139, 214-15 (1861).

Because of the absurdity doctrine's potential to enable the judicial branch to appropriate the Commonwealth's legislative power, which is constitutionally vested in the General Assembly, Va. Const. art. IV, § 1, this Court prohibits courts from exploiting that doctrine as a back door to impose their own policy preferences upon duly enacted statutes. To this end, we recognize absurdity in only two narrowly defined situations: when "the law would be internally inconsistent," and when the law would be "otherwise incapable of operation." Covel v. Town of Vienna, 280 Va. 151, 158, 694 S.E.2d 609, 614 (2010). A related doctrine, although not directly arising from absurdity, requires that when the plain language of multiple statutes conflict, this Court construes those statutes in harmony. See Boynton v. Kilgore, 271 Va. 220, 228-29 & n.11, 623 S.E.2d 922, 926-27 & n.11 (2006).

Applying the plain language of Code § 8.01-243.2, so that its statute of limitations provision applies only if the plaintiff is "confined" at the time the action is "brought," is not absurd. It is not internally inconsistent because it applies identically to identically situated plaintiffs: the

statute of limitations consistently applies to all plaintiffs who are "confined" at the time their action is "brought," and consistently does not apply to all plaintiffs who are not "confined" at the time their action is "brought."  It is not incapable of operation because a court need only determine whether a plaintiff is or is not "confined" when the complaint was "brought."  And it does not conflict with any other statutory provision because, when Code § 8.01-243.2 does apply, it still operates in conjunction with Code § 8.01-230 for the separate determination of when the plaintiff's cause of action accrued and when the limitations period began to run.

## II.  Conclusion

Because I believe the Court fundamentally errs in its duty to construe the plain language of Code § 8.01-243.2, I must respectfully dissent.